IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL.<br><br>Plaintiff,<br><br>V.<br><br>NANCY R. JOHNSON, ET AL.<br><br>Defendants. | § § § § § § § § § § § § § | CIVIL ACTION NO.<br>3:10-CV-00617-B |

---

**DEFENDANT BILLY BERGERON'S MOTION TO DISMISS AND ANSWER TO RECEIVER'S COMPLAINT AGAINST CERTAIN STANFORD INVESTORS SUBJECT THERETO**

---

TO THE HONORABLE COURT:

Defendants Billy J. Bergeron and Bernadette C. Bergeron ("Defendants") file this Motion to Dismiss pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Subject to Defendants' Motion to Dismiss, Defendants also file this Answer to the Receiver's Complaint Against Certain Stanford Investors and would respectfully show the Court as follows:

# I.
# MOTION TO DISMISS

## A. Introduction

Defendants are investors and victims. Yet, Defendants find themselves the target of Receiver's aggressive lawsuit (the "Complaint") that contains little more than vague and conclusory allegations. Receiver's clawback lawsuit against investors appears to be about more than just an attempt to make all investor victims whole. For example, the Receiver's lawsuit against investors initially sought to clawback not only the money investors received in excess of their principal invested, but the principal itself. The Receiver continued to pursue clawback of the investors' principal until the Fifth Circuit Court of Appeals rejected Receiver's attempt to continue a freeze of such funds. Additionally, although Receiver has alleged no specific wrongdoing by investors, it continues to seek attorneys' fees in addition to disgorgement of funds received in excess of the investors' principal.

According to Receiver Ralph Janvey ("Receiver"), a handful of senior officers working for Stanford Group Company and related entities (collectively, "Stanford") spent many years engaged in a secret scheme that eluded investors, regulators, auditors and foreign governments. If these allegations are true, then investors were deceived by the companies the Receiver now represents.

The Court should dismiss the complaint because it fails to reflect the details and give proper notice of the specific actions for which the investors have been individually sued. If there was a "massive Ponzi scheme," the Complaint fails to provide necessary details of the scheme so that the investors can defend themselves.

For example, the Complaint repeats such conclusions as "the Stanford fraud was a Ponzi scheme" and "CD Proceeds from the Ponzi scheme were transferred by the Stanford Defendants to the Stanford Investors solely for the purpose of concealing and perpetuating the fraudulent scheme." Not a single detail about a single transfer, however, is addressed in the complaint. Given that the Receiver seeks to undo transactions valued in the millions to thousands of investors over an unspecified number of years, all based on the allegation that there was a Ponzi scheme *ab initio*, the details are important.

What little that has been provided indicates that this was not a Madoff-like Ponzi scheme in which the organizers do no more than pocket the investor funds.[1] Rather, the Receiver contends that there were actual investments made by SIB. According to the Receiver, about 9% (approximately $800 million) of SIB's portfolio was invested in cash and cash equivalents at the end of 2008. (SEC Action, Doc. 490-2, p. 18.) Even more than that was invested in investments with outside portfolio managers monitored by Stanford analysts. (Id.). The remaining 80% of the portfolio was invested in private equity investments, real estate and loans to Allen Stanford. (Doc. 118, p. 8.)

The unspecified fraud in this lawsuit appears to be something other than a "Ponzi scheme *ab initio*." The Receiver asserts that the Stanford Defendants "inflated the value of its investment portfolio" and made misrepresentations about the safety of the investments. (SEC Action, Doc. 490-2, pp. 10-13). The U.S. Government in its criminal case against Allen Stanford maintains that this is a simple disclosure case "about misrepresenting what the money was invested in." (Transcript of October 14, 2009

---

[1] "A Ponzi scheme is a fraudulent investment scheme where money from new investors is used to pay "profits" on the money contributed by earlier investors, ***without the operation of an actual revenue-producing business*** other than the raising of new funds by finding more investors." *S.E.C. v. Cook*, 2001 WL 256172 at fn 1 (N.D.Tex. 2001) (emphasis added).

Hearing before Judge Hittner, pp. 26-27, attached as Appendix A.) Davis' plea agreement suggests that the false reporting about SIBL eventually led to a Ponzi scheme, although even Davis does not contend that it started out that way. ("This continued routine false reporting by Stanford, Davis, Lopez, Kuhrt and their conspirators . . . created an ever-widening hole between reported assets and actual liabilities, causing the creation of a massive Ponzi scheme whereby CD redemptions *ultimately* could only be accomplished with new infusions of investors funds." (*U.S. v. James Davis*, in the S.D.Tex, Cause No. 3:09-cv-00298-N, Doc 771, p. 44).

The Receiver maintains that "the poor performance of SIB's investment portfolio" created a hole in SIB's balance sheet. (SEC Action, Doc. 490-2, p. 12.) As a result, Jim Davis, Allen Stanford, Gil Lopez and Mark Kuhrt falsified the financial performance information that was represented. (Id.).

It is possible that the alleged fraud did not take on the characteristics of a Ponzi scheme until years after the CD program began, perhaps even after the dramatic market losses of 2008. The details of when, how and from what source payments were made to investors is important to determine if there was intent to hinder, defraud or delay when payments were made to investors. The statements of the Receiver and government suggest that bad or improper investments led to financial misrepresentations, the misrepresentations created a "hole" which, over time, gave rise to a Ponzi scheme. This sequence, unfortunately, is merely speculative because meaningful details about the alleged fraud and when it began are not found in the Complaint. Because the Receiver has failed to plead with the required specificity, this Court should dismiss the Complaint.

### B. The Receiver Fails to Meet the Pleading Standards of Rule 8.

The plaintiff must plead enough facts to state a claim to relief that is plausible on its face and his factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do. *Id.* at 545. The plaintiff must plead facts, not mere conclusory allegations to avoid dismissal. *Alexander v. Holden Business Form, Inc.*, No. 4:08-CV-614-Y, 2009 U.S. Dist. WL 2176582, at *3, (N.D.Tex, July 20, 2009) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

The Receiver's Complaint fails to provide the grounds upon which he is entitled to relief against the investors. In this matter, the Receiver cautiously avoids referencing the legal authority under which he seeks relief, preferring instead to phrase his claims for fraudulent transfer as being "under applicable law." To the extent that particular statutory or common-law claims for relief are intended by the Receiver, they are not identified so that appropriate denials, admissions, addressing of required elements, or affirmative defenses can be made in response. The Receiver diverts attention from the omission by using the labels of "Ponzi" and "fraudulent transfer" and combining these with conclusory statements that the Receivership is entitled to disgorge and control sums that the Receiver has determined by formulaic definition, rather than by particular factual pleading, is the property of the Receivership. Additionally, the Receiver cannot merely label the case as a "massive Ponzi" without pleading the facts that support the treatment

of this matter as a Ponzi scheme. For these reasons, Receiver's complaints against Defendants should be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a)'s standard of pleading.

### C.    12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief can be granted. Relying upon the pleading requirements set forth in Federal Rules of Civil Procedure 8 and 9(b), the Receiver's Complaint Against Investors should be dismissed pursuant to Rule 12(b)(6) on the basis that it fails to state a claim upon which relief can be granted.

Allegations of fraud by a handful of Stanford hierarchy form the basis of the Receiver's clawback claims against investors. Even though he does not allege any investors knew about the fraud, the alleged fraud is the predicate upon which the Receiver's claims are founded.

The Complaint does not provide Defendants with notice of the dates or time periods for which Receiver alleges the Defendants received fraudulent transfers upon which Receiver bases his case. Facts providing the who, what, when and where for these alleged participatory actions by Defendants are not pleaded.

A heightened level of pleading is imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)(quoting FED.R.CIV.P. 9(b)).

> "Although the requirement for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense, nevertheless, directly put, the who, what, when and where must be laid out before access to the discovery process is granted."

*Southland Securities Corp v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir. 2004); *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F. 3d 336, 349 (5th Cir. 2002).

General allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b). *Tigue Investment Co. Ltd., v. Chase Bank of Texas, N.A.,* No. 3:03-CV-2490-N, 2004 U.S. Dist. WL 3170789 at *1 (N.D. Tex.Nov. 14, 2004).

Receiver's allegations against the investors fail to provide this particularity. While the Receiver's index shows the names of investors and the total dollar amount he wishes to convert to Receivership assets, this information is meaningless without the most basic pleading of the dates he alleges these sums were received by investors. Additionally, neither the complaint nor the attached index provides any particularity concerning the source, origination or underlying agreements of the sums shown in the chart (what and where). Defendants are left to speculate on whether they may properly assert limitations, credits or offsets, or other defenses that cannot be assessed without basic notice of the Receiver's time frame (when), and basic facts relied upon by Receiver to answer the what and where elements of particularity.

Without this most basic information, the Receiver's allegations that the monetary sums he states for each investor, constitute merely conclusory allegations. Receiver asks the investors and the Court to assume that all income, received by investors for an undefined or unlimited period of time are fraudulent transfers subject to disgorgement and control by the Receivership under unspecified legal authority.

Although allegations against defendants should be taken in a light most favorable to the Plaintiff, the Fifth Circuit has advised it will not strain to find inferences favorable

to plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); Southland, 365 F. 3d at 361. To avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Dorsey* 540 F. 3d at 338.

    D.    **The Purpose of the Heightened Pleadings Standard is Fair Notice of Securities Fraud Claims.**

The heightened pleading standard of Rule 9(b) serves an important screening function in securities fraud suits: to provide defendants with fair notice of the plaintiff's claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent plaintiffs from filing baseless claims, then attempting to discover unknown wrongs. *Melder v. Morris* 27 F.3d 1097, 110 (5th Cir. 1994); *Southland Securities Corp. v. Inspire Inc. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Fraud charges can serious damage a defendant's reputation, even when the claim is ultimately defeated. *Tigue Investment Co., Ltd., v. Chase Bank of Texas, N.A.*, No. 3:03-CV-2490-N, 2004 U.S. Dist. WL 3170789 at *1 (N.D. Tex. Nov. 15, 2004)(citing *Norman v. Apache Corp*, 19 F. 3d 1017, 1022 (5th Cir. 1994).

The importance of applying this standard is well-illustrated by the Receiver's pleadings. Defendants are entitled to fair notice to allow for meaningful defense. The Receiver should be required to state his claim for relief consistent with 9(b)'s standard.

Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b*). Dorsey v. Portfolio Equities, Inc.*, 549 F. 3d 333, 338-339 (5th Cir. 2008)

Absent pleadings that give notice of the actions for relief sought, each Defendant remains in the dark on whether he has a right to demand heightened pleading standards for securities fraud allegations brought under federal statues, or common law.

The elements and defenses applicable to the various securities fraud claims differ. Defendants who face insufficient notice of the claims made against them are left to speculate on what defenses to allege or what discovery to request.

The *Dorsey* court cautioned against requiring defendants to make assumptions about the existence of elements necessary to state a claim made against them. "Rule 9(b) does not allow plaintiffs to force defendants –or the court- to make such assumptions." *Id*. at 340 (internal citation omitted).

### E. Receiver's Failure to State a Theory of Relief further Supports Dismissal Under Rule 12(b)(6).

Federal case law overwhelmingly demonstrates that assessment of compliance with Rule 9(b) requires the complaint to provide notice of the specific statutory or common law claims brought against a defendant. Cases arising in the District Courts and dismissed under 12(b)(6) for failure to meet the standards for pleading fraud cases with particularity under Rule 9(b), are assessed by the Fifth Circuit based on the elements of specific claim for relief. *See Tuchman v. DSC Communications,* 14 F.3d 1061, 1067-1068 (5th Cir. 1994)(noting that the particularity demanded by Rule 9(b) necessarily differs with the facts of each case.)

In *Tuchman*, the Fifth Circuit affirmed the district court's dismissal of plaintiff's federal securities fraud claims under section 10(b) of the Exchange Act along with Texas common law claims of fraud and after conducting an examination of whether plaintiff's Pleadings met 9(b)'s heightened pleading requirements for the precise elements required by each theory of relief *See Id*. at 1067.

Other Fifth Circuit decisions in securities fraud cases reflect the necessity of 9(b) particularity as to the theories of relief sought as a threshold issue to whether the

complaint meets 9(b)'s requirements for the factual pleadings alleging the elements in support of such theory. The defendant and court must know from the theories pleaded, the elements to which the particularity standard applies.

Prior to dismissing under 12(b)(6) in an action alleging fraud in the sales of securities, the First Circuit in *Williams v. VMX*, analyzed the individual elements of fraud required by the pleading claims under both federal law and Texas common law fraud to determine whether the complaint sufficiently me the 9(b) standards of pleading, holding that "the requirements for particularity in pleading fraud does not lend itself to refinement, and it need not in order to make sense. Directly put, the who, what, when and where must be laid out before access to the discovery process is granted." *Williams v. VMX Technologies, Inc.* 112 F.3d 175, 177-78 (5th Cir. 1997), cert. denied, 118 S.Ct.412 (1997). Stating that it applied the rule of 9(b) with force and without apology, the court wrote, "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed such garrulous style is not an uncommon mask for an absence of detail. The amended complaint here, although long, states little with particularity." Id. at 178.

The *Melder* plaintiffs alleged violations under specifically named federal statutes along with Section 27.01 of the Texas Business and Commerce Code, and state common law fraud and misrepresentations. *Melder v. Morris* 27 F.3d 1097. 1099 (5th Cir. 1994). Because the pleadings provide the specific claims under which relief was sought, defendants were provided adequate notice of the elements to which particularity standard applied, and the defenses that could be pleaded in response. The Fifth Circuit addressed the elements required of all securities fraud claims, and applied Rule 9(b) to an analysis

of the plaintiffs' pleadings, finding that, "Instead of pleading with particularity, the plaintiffs offer only rote conclusions…" *See Id.* at 1100, 1104. "This type of pleading fails to meet the requirements of Rule 9(b), and clearly implicates the kinds of policy concerns motivating the heightened standards in Rule 9(b)." *Id* at 1104. The Fifth Circuit affirmed the district court's dismissal under Rule 12(b) (6) for failure of particularity in the pleading. *Id.*

Affirming the district court's dismissal for failure to comply with Rules 9(b) and 12(b)(6), the Fifth Circuit conducted an analysis of the complaint's adherence to 9(b)'s particularity requirement for allegations of violations under the elements arising from the Texas Securities Act, codified at Tex.Rev.Civ. Stat. Ann. Art. 581-33 (Vernon Supp. 2001). *See Herrmann Holdings, Ltd. v. Lucent Techs, Inc.*, 302 F. 3d 552, 561-64 (5th Cir. 2002). The court also rejected the sufficiency of the particularity of plaintiffs claims pleaded under Texas Business and Commerce Code §27.01(a), based upon an analysis of the required elements. *See Id* at 564-565.

In *Abrams*, the Fifth Circuit affirmed the district court's 12(b)6) dismissal of securities fraud claims brought under federal law. *Abrams v. Baker Hughes, Inc.,* 292 F. 3d 424, 430 (5th Cir. 2002). Unlike the Defendants in this case, the Abrams defendants were made aware of the theories of relief sought against them. Even so, the court found that the plaintiff failed to meet the heightened pleading requirements of the PSLRA. *See Id.* at 430.

Recently, in *Dorsey*, the plaintiff alleged that the defendants violated various federal statues in a securities fraud case. See *Dorsey v. Portfolio Equities, Inc.*, 540 F. 3d 333, 339 (5th Cir. 2008). The district court applied the particularity standards under Rule

9(b) and PSLRA to the elements required by those theories of relief and found that plaintiff failed to specifically allege when purchases were made from which his alleged claims arose. *See Id* at 340. The relevance of the dates was determinative to the claims against defendants upon application of the statute of repose. *Id.*

> F. **The Receiver's claims for Fraudulent Transfers should be dismissed because the Receiver has failed to state claim upon which relief may be granted.**

Fifth Circuit precedent favors applying Rule 9(b) to fraudulent transfer actions. *Quilling v. Stark*, No. 3:05-CV-1976-L, 2006 U.S. Dist. WL 1683442 at *5 (N.D. Tex. June 19, 2006)(Relying on *Bruswick Corp. v. Vineberg*, 370 F. 2d 605, 610 (5th Cir. 1967). More recently, in *Alexander*, the court distinguished those cases that have concluded that Rule 9(b) does not apply to claims brought under state versions of the Uniform Fraudulent Transfers Act by finding such decisions are based upon reasoning that some claims under the UFTA may be made without proof of the sort of common-law or actual fraud contemplated by Rule 9(b). *See Alexander v. Holden Business Forms, Inc.*, No. 4:08-CV-614-Y, 2009 U.S. Dist. WL 2176582, at *3, (N.D. Tex July 20, 2009). Comparing the required elements for claims under different sections of TUFTA, the court found that allegations under some portions of the statues would require Rule 9(b) particularity, while other might not. *See Id* at *3. The court also noted that the particulars of a Texas common-law fraud case could be different than a claim brought under TUFTA. *Id.* at *4.6

While constructive fraud claims may require less particularity in pleading, Defendants are still entitled to sufficient notice of the precise relief sought to prevent guessing about defenses, limitations and credit off-sets. The Receiver fails the

requirements of Federal Rule of Civil Procedure 8 and 9(b) when he fails to give notice of the claims under which he brings his case. For these reasons, Receiver's complaints against Defendants should be dismissed.

>    G.  **The Receiver's claim for Unjust Enrichment should be dismissed because of the Receiver has failed to state claim upon which relief may be granted.**

As with the fraudulent transfer claim against the investors, the Receiver does not state the applicable law for its claim of unjust enrichment.

In Texas, a plaintiff may recover under an unjust enrichment theory when the defendant "has obtained a benefit… by fraud, duress, or the taking of undue advantage." *Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC.* No. 3:08-CV-1782-M, 2009 U.S. Dist. WL 1469808 at *10 (N.D. Tex. May 27, 2009)(citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W .2d 39, 41-42 (Tex. 1992)).

In *Breckenridge*, the court found that where the unjust enrichment theory mirrored the plaintiff's fraud claims, which were dismissed for filing the particularity requirements of Rule 9(b), it would be "nonsensical to allow what is essentially a fraud claim to evade the particularity requirements through pleading under and equitable, rather than legal theory." Upon that basis, the court dismissed the unjustment enrichment claims against defendants. *See Breckenridge*, 2009 WL 1469808 at *10-11.

The Receiver's claim for unjust enrichments against the investors must be dismissed because of the Receiver has not plead facts that fairly notify the Defendants of the applicable law, the facts supporting the assertion of the claim for unjust enrichment under the applicable law, nor the actions of the investors that constitute fraud, duress, or taking advantage of other investors. Receiver's complaint asserts unjust enrichment as an

alternative to the assertions of fraud. For these reasons, The Receiver's Complaint should be dismissed under Rule 12(b)(6) for failure to give each investor notice to which he was entitled under Rule 9(b).

## II.
## ANSWER TO THE RECEIVER'S COMPLAINT

### SUMMARY

1. Defendants deny the allegations in Paragraphs 1 to 6 for lack of knowledge or information sufficient to form a belief. Defendants deny the last sentence of paragraph 4.

### PARTIES

2. Defendants admit the allegation in Paragraph 7 that the parties to this Complaint are the Receiver and the investors named in an Appendix to the Complaint. Defendants, however, deny being proper parties.

3. Admission or denial is not required for paragraph 8.

### PROCEDURAL HISTORY

4. The allegations contained in Paragraph 9 require no response because they are legal conclusions. To the extent a response is required, Defendants deny them for lack of knowledge or information sufficient to form a belief.

### JURISDICTION & VENUE

5. Defendants deny the allegations in Paragraphs 10 to 14 for lack of knowledge or information sufficient to form a belief.

### STATEMENT OF FACTS

6. Defendants deny the allegations in Paragraphs 15 to 26 for lack of knowledge or information sufficient to form a belief.

REQUESTED RELIEF/PRAYER

7. Defendants deny the allegations in Paragraphs 27 to 28 for lack of knowledge or information sufficient to form a belief.

8. The allegations in Paragraph 29 do not require a response because they are legal conclusions. To the extent a response is required, Defendants deny them for lack of knowledge or information sufficient to form a belief.

9. Defendants deny the allegations in Paragraphs 30-31 for lack of knowledge or information sufficient to form a belief.

10. The allegations in Paragraphs 32 to 42 require no response because they are legal conclusions. To the extent a response is required, Defendants deny paragraphs 32-42.

APPENDIX

11. Defendants deny that the amounts stated in the Receiver's Appendix to his Complaint are correct.

III.
AFFIRMATIVE DEFENSES

AFFIRMATIVE DEFENSES UNDER UNIFORM FRAUDULENT TRANSFER ACTS

12. The Receiver cannot prevail upon his claims because any amounts Defendants allegedly received were not fraudulent transfers as a matter of law and Defendants have an affirmative defenses under TEX. BUS. & COMM. CODE §24.010. Defendants assert that the transfers were (1) for reasonably equivalent value based upon an existing antecedent debt; and (2) were made and received in good faith, not subject to being voidable under the Act.

A.    Transfers were made for reasonably equivalent value.

13.    The transfers made to the Defendants were transfers made for "antecedent debts" within the meaning of Tex. Bus. & Comm. Code §24.004(a) because the funds were CD proceeds pursuant to written certificate of deposit agreements with Stanford International Bank ("SIB"), which granted them certain rights and obligations.  There was a debtor/creditor relationship between the investor defendants and the Stanford Bank based upon written agreements well before the underlying SEC enforcement action against Stanford and the resulting receivership and restraining order.

14.    As a matter of law, the principal payments received are a reasonably equivalent value because they represent the payment of an antecedent debt.  Section 24.004(a) of the Act specifically provides that "value" includes satisfaction of an antecedent debt.  TEX. BUS. & COMM. CODE §24.004(a).  A debtor may also receive "reasonably equivalent value" when the debtor's payment of a third-party's debt reduces the debtor's liabilities.  *In re IFS Financial Corp.*, 417 B.R. 419, 441, 442 (Bkrtcy. S.D.Tex. 2009).   The estate's liabilities are reduced in the same amount as the transfer. SIB received reasonably equivalent value from the disputed transfers in that its liability was reduced in the amount of the transfers.  *Id.*

15.    Since the SIB CD's are contractual obligations of SIB, SIB was obligated to pay the interest that accrued on the SIB CDs.  SIB's payment of the accrued interest constituted a dollar-for-dollar forgiveness of a contractual debt, which is "reasonably equivalent value." *See Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir. 2008); *see also In re Carrozzella &  Richardson*, 286 B.R. 480, 491 (D.Conn. 2002); *see also*

16

*Kipperman v. Onex Corp.*, 411 B.R. 805, 851 (N.D.Ga. 2009); *In re N&D Properties, Inc.*, 54 B.R.590, 605 (D.C. 1985).

  B. **Payments made to investors were received in good faith.**

  16. The Receiver has not alleged sufficient facts relating to each "transfer" of principal or interest for Defendants to be able to determine what date the Receiver believes that Defendants should have reasonably known of SIB's insolvency or been on notice that the principal and interest payments were being made to delay, hinder or defraud creditors of the debtor.

  17. Defendants did not have knowledge of facts sufficient to put them on notice that payments were being made in order to delay, hinder or defraud creditors. *See Terry v. June*, 432 F.Supp.2d 635, 641 (W.D.Va. 2006); *United States v. Romano*, 757 F.Supp. 1331, 1338 (M.D.Fla. 1989). As a matter of law, the facts and circumstances surrounding the operation of SIB could not have put Defendants as innocent investors on notice because the SEC and FINRA, who are held to a higher standard of knowledge and inquiry and who were responsible for monitoring the activities of the Stanford Group.

UNJUST ENRICHMENT IS BARRED

  18. A cause of action for unjust enrichment only exists under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. Defendants did not obtain a benefit from SIB by fraud, duress or the taking of undue advantage.

  19. Additionally, a certificate of deposit contract exists between the investor defendants and the Receiver's predecessor. When a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery for unjust enrichment. *See*

*Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Becker v. National Educ. Training Group, Inc.* 2002 WL 31255021, *4 (N.D.Tex. 2002).

### ESTOPPEL/PROMISSORY ESTOPPEL

20.     The Receiver cannot prevail upon his claims because any amounts Defendants allegedly received were the result of reasonable reliance upon misrepresentations made by the Receiver's predecessor in interest.

### FAILURE TO MITIGATE

21.     The Receiver cannot prevail upon his claims because, in pursuing them, he has failed to mitigate damages to the receivership estate.

22.     The Receiver cannot prevail upon his claims because his predecessor in interest failed to mitigate damages for the amounts now sought from Defendants.

### FRAUD/MISREPRESENTATION

23.     The Receiver cannot prevail upon his claims because they are the result of fraud or misrepresentation by the Receiver's predecessor in interest.

### ILLEGALITY

24.     The Receiver cannot prevail upon his claims because they are the result of illegality by the Receiver's predecessor in interest.

### LACHES

25.     The Receiver cannot prevail because he improperly rested on his claims and Defendants would be prejudiced as a result.

### STATUTE OF LIMITATIONS/STATUTE OF REPOSE

26.     The Receiver cannot prevail upon his claims because the limitations period has expired and all or part of the claims or remedies are extinguished.

## UNCLEAN HANDS

27. The Receiver cannot prevail upon his claims due to the comparative lack of equity by the Receiver and his predecessor in interest.

## IN PARI DELICTO

28. The Receiver cannot prevail upon his claims due to wrongful conduct by the Receiver and his predecessor in interest.

## PRINCIPLES OF EQUITY

29. The Receiver cannot prevail upon his claims because they are not consistent with applicable principles of equity.

## OFFSET

30. The Receiver's claims must be offset by any amounts the Defendants paid in penalties and taxes.

31. The Receiver's claims must be offset by damages he caused Defendants as a result of an unlawful asset freeze.

## IMPROPER PARTY/STANDING

32. The Receiver is not the proper party to be entitled to attorneys' fees under Texas Uniform Fraudulent Transfer Act.

## RES JUDICATA/COLLATERAL ESTOPPEL

33. The issue of whether a claim can be made against innocent investors for the amount of the principal has been previously decided by the Fifth Circuit Court of Appeals and any claim the Receiver asserts for such is barred.

## IV.
## JURY DEMAND

Defendants request that this matter be tried before a jury.

## V.
## PRAYER FOR RELIEF

Defendants respectfully ask this Court for an Order that: (1) dismisses the Receiver's claims for fraudulent conveyance, unjust enrichment, and constructive trust or, alternatively, denies them; (2) awards Defendants a credit in the amount of damages suffered as a result of the Receiver's unlawful asset freeze; and (3) awards Defendants the costs of this lawsuit, attorneys' fees, and pre-judgment and post-judgment interest. Defendants also seek a jury and any such relief in law or equity that the Court may find appropriate.

Respectfully submitted,

STANLEY FRANK & ROSE, LLP


BY:     /s/ Michael J. Stanley
      Michael J. Stanley
      Texas Bar No. 19046600
      7026 Old Katy Road, Suite 259
      Houston, Texas 77024
      (713) 980-4381
      (713) 980-1179 – Fax

Attorney for Defendants
Billy J. Bergeron and Bernadette C. Bergeron


### CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Federal Rules of Civil Procedure a true and correct copy of the above and foregoing document was served via ECF on counsel of record on this the 8th day of June, 2010.

      /s/ Michael J. Stanley
      Michael J. Stanley